UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

03  12620 DPW

| | |
|---|---|
| D. LYLE ELKINS,<br>Plaintiff, | )<br>)<br>) COMPLAINT FOR |
| VS. | ) BEACH OF DUTY OF FAIR<br>) REPRESENTATION AND BREACH<br>) OF BREACH OF COLLECTIVE |
| TEAMSTERS LOCAL 264,<br>INTERNATIONAL BROTHERHOOD,<br>OF TEAMSTERS and<br>SHUTTLE AMERICA CORPORATION)<br>Defendants. | ) BARGIANING AGREEMENT<br>)<br>) MAGISTRATE JUDGE_____<br>)<br>). |

## JURISDICTION AND VENUE

1. **JURISDICTION.** This case seeks relief for breach of the duty of fair representation, and breach of collective bargaining agreement. This Court has jurisdiction of these claims under *Railway Labor Act*, 45 U.S.C. §§ 151, *et seq.* ("RLA") providing for jurisdiction over claims arising from hybrid action from violations of collective bargaining agreements, under sections 1331 and 1337 of the Judicial Code (28 U.S.C. §§ 1331, 1337) as this case arises under federal laws regulating interstate commerce. The claims asserted herein arising under state law arise from the same facts and circumstances as the claims arising under federal law, and form part of a single case or controversy within the meaning of Article III of the Constitution of the United States and are within this Court's Supplemental Jurisdiction under 28 U.S.C § 1367.

2. **VENUE.** Venue is appropriate in this Court under 28 U.S.C. §1391(b), §1392(a), as some or all of the acts or events giving rise to the claim occurred within this judicial district and some or all of the defendants carry on business within this judicial district. Plaintiff is a resident of this judicial district. Venue is also appropriate under 29 U.S.C. 185(c), as Teamsters Local No. 264, with its main office in Cheektowaga, New York are affiliated with the International Brotherhood of Teamsters with its headquarters in Washington, District of Columbia and are engaged in representing members within this district. Shuttle America Corporation has its headquarters in Greenwich, Connecticut and is engaged in interstate commerce.

**PARTIES**

3. At all material times herein, plaintiff D. Lyle Elkins (hereinafter, "plaintiff") was a member in good standing of defendant Teamsters Local No. 264 and was employed by defendant Shuttle America Corporation under the terms of a collective bargaining agreement (hereinafter, the "Contract") between Teamsters Local No. 264 and from about April, 2001 until his discharge on or about February 3, 2003, and was employed as a full-time regular employee in excess of three years.

4. Defendant TEAMSTERS LOCAL NO. 264, INTERNATIONAL BROTHERHOOD OF TEAMSTERS (herein "Local 264" or the "Union"), is a labor organization representing employees in an industry affecting commerce within the meaning of sections 301(a) and 501 (1) and (3) of the *Labor Management Relations Act*, as amended ("LMLA"), (29 U.S.C. 142(1), (3), 185(a)).

5. Defendant Shuttle America Corporation (hereinafter, "defendant Shuttle America") is an employer in an industry affecting commerce within the meaning of sections 301(a) and 501 (1) of the Labor Management Relations Act, as amended ("LMLA") (29U.S.C. 142 (1), 185 (a)).

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

6. During the period April, 2001 to date, defendant Local 264 and defendant Shuttle America were and are parties to said Contract.

7. In December of 2002, an arbitration award ordered defendant Shuttle America to reinstate plaintiff, and to place him in the first available ground school so that he might qualify as a captain on a SAAB 340 and thereafter resume his flight duties. Said award also ordered defendant Shuttle America to compensate plaintiff with back-pay from his date of termination, on or about November 24, 2001.

8. Thereafter, disagreement arose as to the sum of back-pay owed plaintiff which was ongoing when plaintiff received a faxed letter from the chief pilot, Scott Waldman, (hereinafter, "Chief Pilot") advising him that the former was to commence ground school on February 3, 2003 at its headquarters in Fort Wayne, Indiana.

9. Plaintiff immediately contacted his attorney and that of the Teamsters,

Joseph Giroux (hereinafter "Attorney Giroux") advising him of plaintiff's ongoing stress and now the additional stress of defendant Shuttle America wanting him to attend ground school with the back-pay issue still unresolved. Plaintiff believed that his return with unresolved matters would subject himself to a hostile work environment. Because of the extreme stress generated, plaintiff had to seek professional help. In said letter, plaintiff advised Attorney Giroux of his medical state. Attorney Giroux was told in this letter that if a medical report was necessary, plaintiff will have his treating psychiatrist fax him a report. However, in the interim, Attorney Giroux was faxed a letter from this doctor advising Attorney Giroux that it was not in his patient's best medical interest to attend this ground school.

  10. On or about February 7, the Chief Pilot notified plaintiff that he had been "taken off the payroll". Based on an earlier conversation that plaintiff had with Don Triechler, Director, Teamster's Aviation Division, (hereinafter Union's Aviation Director), in which plaintiff was told that Shuttle America might place him on leave without pay if I failed to attend the February 3 ground school, plaintiff and the Union were of the belief that the above mentioned letter reflected this status.

  11. In a response to a letter sent by plaintiff inquiring if Shuttle America received prior notice of his not being able to attend the February 3 ground school because of medical reasons, the Chief Pilot responded in a letter dated February 24, 2003 that the defendant Shuttle America had known of this fact.

  12. Shortly thereafter, plaintiff, still believing he was on "leave without pay" commenced the initial grievance process under Article 19A, "Non Disciplinary Conflicts" of the Contract which covers matters not involving discipline or employee termination issues. At no time did defendant Shuttle America advise plaintiff that he was no longer employed with it. Actually, on February 6, 2003, plaintiff directed the Director of Human Resources of defendant Shuttle America to place some of his earned vacation time into the sick pool bank of a very ill employee. The Director of Human Resources never advised plaintiff that he was no longer an employee of defendant Shuttle America.

13. After filing a grievance without the assistance of the defendant Union, plaintiff sent a copy of same to defendant Union's local agent for Shuttle America pilots, Scott Chismar, (hereinafter, "Agent"), Attorney Giroux, and its treasurer, Ron Lucas, (hereinafter "Treasurer"). The Shuttle America Director of Operations advised plaintiff that the grievance was being returned due to its lack of conformity with Article 19 of the Contract. Plaintiff on March 22, 2003 sent a letter to the defendant Union's Agent. Plaintiff told the Agent that he was at a loss of the grievance not being in conformity since he had earlier sent the Agent, Attorney Giroux, and the Treasurer a copy of the grievance and received no notice from the defendant Union or Attorney Giroux of any nonconformity.

14. On March 25, 2003, after leaving two telephone messages with the Treasurer that went unanswered, plaintiff sent a letter to him seeking his assistance in relation to the pending grievance. No response was received.

15. On March 26, 2003, plaintiff wrote the defendant Union's Aviation Director seeking his assistance. No response was received.

16. On March 27, 2003 defendant Union's Agent telephoned plaintiff and told him to place a signed grievance in the mail directed to the Agent.(four part form, after filing, one copy marked Grievant is returned to him) Thereafter, the Agent would attached plaintiff's previously sent summary and file the grievance with defendant Shuttle America.

17. Plaintiff, on his own, sought and obtained a copy of his personnel file which he received on or about April 3, 2003. After reviewing its contents, plaintiff was put in such shock to the point where medication was required upon his finding a falsified document signed by defendant Shuttle America's Director of Operations, that the former had, "voluntarily resigned" as of February 3, 2003 due to his failure to attend ground school scheduled for that date.

18. On April 4, 2003, plaintiff sent a letter to the defendant Union's Agent with the falsified document enclosed asking that a grievance be filed immediately for wrongful dismissal.

19. On April 5, 2003, to expedite the filing of the wrongful dismissal grievance, plaintiff sent a signed grievance form to defendant Union's Agent.

20. On April 8, 2003, plaintiff sent another letter, among other things, requesting that the pending wrongful dismissal grievance contain a damage claim for intentional/negligent infliction of emotional distress together with back-pay.

21. On April 15, plaintiff sent a letter asking defendant Union's Agent if he had received a copy of the signed grievance. No response was received.

22. On April 25, 2003, plaintiff sent defendant Union's Agent information on previously sent and received correspondence from defendant Shuttle America to allow him to get a better overview of the grievance. No response was received.

23. Shortly thereafter, plaintiff received a note from the defendant Union's Agent telling him to complete the enclosed grievance "as you see fit" and return it to him for filing. Plaintiff promptly did same and sent it to defendant Union's Agent.

24. On May 5, plaintiff sent another letter to Defendant Union's Agent requesting again confirmation of the filing of the grievance and a copy of same. No response was received.

25. On May 8, 2003, plaintiff telephoned the shop steward for Shuttle America pilots, David Gale, asking him to get a copy of the grievance. He said that he would speak to the defendant Union's Agent. He never received any further response.

26. On May 11, 2003, plaintiff sent another letter to defendant Union's Aviation Director seeking his intervention to obtain a copy of the grievance. Plaintiff received no response.

27. On July 7, plaintiff sent once again another letter to defendant Union's Agent seeking a copy of the grievance. No response was received.

28. On July 29, 2003, plaintiff received a message on his answering machine from defendant Union's Agent. He said, "We want to do it on August 22 in Pittsburgh…" He further said that defendant Shuttle America wanted to have it in Fort Wayne; however, he was able to have it set for Pittsburg since it would be easier travel for plaintiff . Plaintiff sent a letter to him asking what "it" was. Plaintiff assumed "it"to

be a System Adjustment Board hearing; however, since plaintiff had yet to receive a copy of either grievance and since he did not receive a copy of the petition that was to be filed with the board chairman before a hearing date could be set per Article 20 D, 1 and 2, of the Contract, plaintiff did not understand how a hearing date could be set. Plaintiff again requested copies of both grievances that should be on file and plaintiff outlined his efforts to obtain same from others. He also advised this Agent that he could not attend any hearing on August 22 due to legal business in Canada; plaintiff would not be available until sometime in September. No response was received.

29. Since no confirmation was received from the Agent, plaintiff L. Elkins, on August 13, 2003 sent a certified letter to him explaining Article 20 of the Contract. Again, a request was made for copies of the grievances and the petition. No response was received.

30. On September 1, 2003, plaintiff sent a letter to defendant Union's Agent requesting counsel be appointed. Again, a request was made for copies of the grievances, defendant Shuttle America's responses, and copy of the required System Adjustment Board petition. No response was received.

31. On September 16, 2003, plaintiff sent to the defendant Union's Treasurer a letter seeking his assistance and providing an outline of all the aforementioned events together copies of all correspondence. No response was received in relation to this information package.

32. On October 6, 2003, Attorney Steven MacDonald sent a letter to defendant Shuttle America's Director of Operations seeking a copy of the grievance and petition. In a November 11, 2003 response letter, counsel for defendant Shuttle America wrote, in part, "... any requests for information related to such grievances should be made through the Teamsters."

33. On October 7, 2003, Attorney Steven MacDonald, sent Thomas Dziedzic, outgoing President of Local 264, a copy of the letter/information package sent defendant Union's Treasurer. No response was received.

34. On November 14, 2003, the defendant Union's Treasurer telephoned

plaintiff and left number. Plaintiff returned the call and left message to call. On November 17, 2003 defendant Union's Treasurer called plaintiff to say that he was moving up to be President of defendant Local 264. Plaintiff stressed his desire to resolve matter and his wanting copies of grievances, defendant Shuttle America's responses, and a copy of petition. The defendant Union's Treasurer said he would get the requested documents from the defendant Union's Agent.

35. On November 24, 2003, the defendant Union's Treasurer called to tell plaintiff that he is trying to have defendant Shuttle America take him back. The defendant Union's Treasurer said when he asked this Agent, the Agent's eyes glazed over "like a deer caught in headlights." Defendant Union's Treasurer said he would get a copy of grievance for plaintiff.

36. On or about December 5 or 6, 2003, plaintiff called defendant Union's Treasurer to check on status. Plaintiff left message to call him.

37. On December 9, 2003, plaintiff called defendant Union's Treasurer. The defendant Union's Treasurer asked if plaintiff would work with a new agent. Plaintiff agreed provided plaintiff always had direct access to him. He agreed. He said that the new agent would present plaintiff's case in front of System Adjustment Board. Plaintiff immediately said that the last time both spoke, the defendant Union's Treasurer told him that the matter would go to arbitration bypassing the System Adjustment Board since such a hearing would be a waste of time and money. Plaintiff was told that 99.99% of time, these hearings are deadlocked. The defendant Union's Treasurer agreed; however, he said that defendant Shuttle America believed it could "sway" one of the two defendant Union's system Adjustment Board members to its side. Plaintiff told him that he did not like what was happening. Plaintiff asked again where were his copies of the grievances? Again, plaintiff was promised same would be forthcoming.

38. On or about December 19, 2003, plaintiff received a message for him to call the defendant Union's Treasurer. On December 20, 2003, plaintiff returned the call and left message. When plaintiff did not receive a return call, he called the defendant Union's Treasurer on December 22, 2003. The defendant Union's

Treasurer said he and defendant Union's Aviation Director were playing "phone tag." on the setting a date. On or about December 19, 2003, plaintiffs received a message for him to call the defendant Union's Treasurer. On December 20, 2003, plaintiff returned the call and left message. When plaintiff did not receive a return call, he called the defendant Union's Treasurer Lucas and incoming Local 264's president, on December 22, 2003. He said he and defendant Union's Aviation Director were still playing "phone tag." The defendant Union's Treasurer said will get back to plaintiff. Plaintiff told defendant Union's Treasurer that former was still is waiting for copies of the requested material.

39.     After expecting to hear from the Defendant Union's Treasurer on December 24, when no call was received by 3:40 p.m., plaintiff called him. The defendant Union's Treasurer said he called defendant Shuttle America this morning to ask if it had a copy of the grievance. It said it did and would fax him a copy. He has yet to receive it. When he did, he would fax copy to plaintiff after asking for and receiving plaintiff's fax number. Plaintiff told him it was rather odd that the defendant Union's Treasurer and incoming president as of January 1, 2004 had to go to defendant Shuttle America to obtain copy of grievance when the Union copy should be on file already. He was also asked if a copy of petition or a copy of Shuttle America's responses to grievances were in the file. He said he was not aware. Plaintiff told him that not only should defendant Shuttle America have sent him a certified mail copy of its response, it was required to do same for defendant Union. Plaintiff told the defendant Union's Treasurer that a lawsuit would be filed by the end of December, 2003 against the Union for bad faith representation and defendant Shuttle America for wrongful dismissal if the matter not resolved by that point in time. The defendant Union's Treasurer said that one had to "do what you have to do."

40.     Based on the aforementioned, plaintiff has reached the point that any attempt to resolve his grievance with fair dealing within the parameters of the contract with both defendant would be futile.

## FIRST CLAIM FOR RELIEF
### (Breach of Duty of Fair Representation)

Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 above.

41. At all material times herein, Local 264 owed plaintiff a duty of fair representation. The duty of fair representation requires a union to serve its' members interests without hostility or discrimination towards any, to exercise its discretion with complete good faith and honest, and to avoid arbitrary conduct. This duty prohibits bad faith or discriminatory treatment of members by their union. The duty to refrain from arbitrary conduct further prohibits actions by the union so far outside a wide range or reasonableness as to be irrational.

42. By the acts alleged herein, Local 264 breached the duty of fair representation owed plaintiff. Among other things, Local 264 did not meet with plaintiff to discuss his grievance, did not investigate his grievance, thereon alleges, that Local 264 acted towards plaintiff in bad faith and out of hostility towards plaintiff because of plaintiff's position on not wanting to be a card carrying member within the Teamsters Union, his request for replacement counsel to handle the two most recent grievances, Local 264's not wanting to incur any additional expenses in seeking the reinstatement of Plaintiff, and plaintiff is further informed and believes, and thereon alleges, that the Teamster-appointed members of the System Adjustment Board would be biased against plaintiff because of the desire and its own best interests, in particular, financial, to have at least one of its two members on the System Adjustment Board to vote against him thus extinguishing any possibility of having to incur the time and expense of arbitration. As grounds for this belief, defendant Union attempted to subject plaintiff to a System Adjustment Board hearing without any grievances being filed and/or properly responded to by defendant Shuttle America, in complete violation of the terms of the Contract, with both defendants conspiring to accomplish same.

43. Because Local 264 breached its duty of fair representation, plaintiff lost the right to enforce through arbitration his claims against defendant Shuttle America for

breach of the collective bargaining agreement between defendant Shuttle America and defendant Local 264. Plaintiff has been compelled to initiate this action to obtain relief under his claims against defendant Shuttle America and has incurred the costs, attorney's fees, and expenses of this action that, but for Local 264's breach of duty, he would not have incurred. In addition, because of Local 264's breach of duty, plaintiff has lost the ability to obtain the benefits of a speedy resolution of his dispute with defendant Shuttle America and has incurred additional loss by reason of Local 264's breach of duty and delay, including the time-value of any monetary relief he obtains from defendant Shuttle America and emotional distress and suffering.

## SECOND CLAIM FOR RELIEF
### (Breach of Collective Bargaining Agreement)

Plaintiff incorporates by reference the allegations in paragraphs 1 through 40 above.

33. Defendant Shuttle America has violated the Contract by falsifying records that plaintiff voluntarily resigned his captain' position, ignored information that he had a medical excuse and never asked him to provide a report, or, before he could, had entered a false document in his file that he had resigned, and thereafter attempted to hide this fact, and did not allow plaintiff to return to work. Defendant Shuttle America further discharged plaintiff without just cause and without giving plaintiff a notice of the alleged cause for discharge within per Article 19 B of the Contract of the occurrence of the purported cause for discharge. In addition, such deliberate actions have42 U.S.C. § 200e5(f)(3) caused and continues to cause plaintiff great emotional distress.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. **Against Local 264:** A declaration that the Union breached its duty of fair representation and an award against the Union of such damages, including costs, attorney's fees and expenses and emotional distress and suffering, caused by that breach of duty, as alleged more specifically hereinabove.

2. **Against Shuttle America:** Under the Second Claim for Relief, an award of past and future damages, and equitable relief of reinstatement, general and special damages, including damages for past and future lost wages and benefits, anxiety, emotional distress and suffering, and attorney fees.

3. His costs of suit.

4. Such other and further relief the Court may deem appropriate on the evidence presented.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues and claims for relief in this action.

Dated: December 30, 2003

D. Lyle Elkins, pro se
41 Red Lily Pond Road
Centerville, MA 02632
(508) 775-2877
BBO# 153090